UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


THE RIGHTSTONE, INC.,
    Plaintiff,


    v.                                                CIVIL ACTION NO. 15-13524-NMG


ELFERS RRH, INC.,
ELFERS R.R.H., LTD.,
C&M INVESTMENT LIMITED
    PARTNERSHIP,
BOSTON CAPITAL PARTNERS, INC.,
    Defendants.


REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION TO REMAND ACTION
TO PLYMOUTH SUPERIOR COURT (#14).

KELLEY, U.S.M.J.

I. INTRODUCTION.

The original complaint in this action incorporated five claims: Count One, Breach of Fiduciary Duty; Count Two, Breach of Contract; Count Three, Declaratory Relief - Replacement of General Partner; Count Four, Declaratory Relief - Dissolution; and Count Five, Declaratory Relief - Replacement of Managing Agent. Plaintiff, The Rightstone, Inc. ("Rightstone"), instituted this action in the Plymouth County Superior Court on August 24, 2015; Defendants Elfers R.R.H., Ltd. ("Elfers Partnership") and Elfers RRH, LLC ("Elfers LLC") (collectively "Elfers Defendants") removed the case to the federal court on October 7, 2015. (#1.) Two weeks later on October 21, 2015, Elfers filed a motion to dismiss or, alternatively, to transfer action for *forum non conveniens*.

(#8.)

Rightstone amended the complaint on November 4, 2016 (##10-12) and two days later filed a motion to remand. (#14.) Defendants C&M Investment Limited Partnership ("C&M") and Boston Capital Partners, Inc. ("Boston Capital") filed a motion to dismiss (#19) the amended complaint on November 18, 2015. The Elfers Defendants followed suit a week later, filing a motion to dismiss the amended complaint. (#26.)

All of the pending motions have been fully briefed. Presently before the Court for resolution is Plaintiff's motion to remand. (#14.)

## II. THE FACTS.

According to the allegations set out in the complaint,[1] Rightstone, a Massachusetts corporation, is the Class A Limited Partner of the Elfers Partnership, a Florida limited partnership.[2] (#7-2 ¶¶ 1, 2.) Defendant Elfers LLC is a Florida limited partnership and the General Partner of the Elfers Partnership. (#7-2 ¶ 3.) Elfers LLC was owned and controlled by a developer named John M. Curtis until 2012 when the USDA Rural Development agency demanded his removal. (#7-2 ¶ 9.) Mr. Curtis was succeeded as the Managing Member of Elfers LLC by his wife, Gail W. Curtis. (#7-2 ¶ 9.) Defendant C&M is a Massachusetts limited partnership and the Class B Limited Partner of the Elfers Partnership. (#7-2 ¶ 4.) C&M is an affiliate of Boston Capital. (#7-2 ¶ 11.) Boston Capital is a Massachusetts corporation and the Special Limited Partner of the Elfers Partnership.

---

[1] The facts are from the original complaint, the pleading upon which the case was removed.

[2] Rightstone became involved with the Elfers Partnership in 2005 when the original Class A Limited Partner, the Florida Land Bank Partnership, sold and assigned its interest to Plaintiff with the consent of Elfers LLC. (#7-2 ¶ 12.)

(#7-2 ¶ 5.)  The Special Limited Partner served as the liaison between the Elfers Partnership and the investor Limited Partners, and was granted certain rights and powers under the Limited Partnership Agreement for the Elfers Partnership ("Elfers LPA") to be exercised for the benefit and protection of the Limited Partners. (#7-2 ¶ 10.)

The Elfers LPA was amended and restated on November 1, 1978 in order to raise capital to enable the Elfers Partnership to construct and operate a 74 unit low-income housing project known as "Orangewood Lakes Apartments" (the "Housing Project") in New Port Richey, Florida. (#7-2 ¶ 7.) Construction of the Housing Project was funded by the capital contributed by investors admitted pursuant to the 1978 amended and restated Elfers LPA together with a loan from the Farmers Home Administration ("FmHA") of the United States Department of Agriculture. (#7-2 ¶ 7.)  The FmHA, which is now known as the "Rural Development" agency, continues to regulate the Housing Project.[3] (#7-2 ¶ 7.)

As set forth in the Elfers LPA, a primary objective of the Elfers Partnership was the generation of a regular yearly cash distribution to its partners from the operations of the Housing Project. (#7-2 ¶ 13.)  However, shortly after Rightstone purchased the Class A Limited Partner interest, the Housing Project started having financial problems. (#7-2 ¶ 15.)  As a consequence, the Elfers Partnership did not make a cash flow distribution to Plaintiff for two or more consecutive years. (#7-2 ¶ 15.) The Elfers LPA provides, in part, that:

> If . . . (ii) the Partnership shall not have distributed to the Partners Cash Flow of at least $1,500 during each of any two consecutive years after the year in which the Initial Cash Flow Distribution Date occurs, then the Special Limited Partner, subject to FmHA approval if required, may forthwith terminate the management agreement with the Management Agent and appoint a new Management Agent.

---

[3] The terms FmHA and Rural Development are used interchangeably throughout this report.

#7-2 ¶ 14 (quoting Elfers LPA Article XI at 33-4). Plaintiff's President, Neal M. Brown, questioned the General Partner, Mr. Curtis, about the default and suggested that he might request that the Limited Partner take action to replace the Management Agent. (#7-2 ¶¶ 1, 15.) Mr. Curtis dissuaded Mr. Brown from taking that proposed action, and the two began to discuss alternatives for Rightstone either to receive distributions or to sell its interest in the Elfers Partnership to a third party. (#7-2 ¶¶16, 17.) In 2011, Mr. Curtis was exploring the option of refinancing the FmHA mortgage loan at a higher amount,[4] with the plan being to distribute the anticipated additional mortgage proceeds to the partners. (#7-2 ¶ 19.) Based on representations made by Mr. Curtis, Rightstone agreed not to take any action either to sell its interest in the Elfers Partnership or to attempt removing Mr. Curtis or the Management Agent. (#7-2 ¶ 20.)

In 2012, Mr. Curtis, through Elfers LLC on behalf of the Elfers Partnership, applied to Rural Development for permission to refinance the Housing Project. (#7-2 ¶ 21.) Upon inquiry, Rightstone was informed later in 2012 that the application to refinance had been tied up by a local Rural Development administrator and legal action had to be taken to force Rural Development to act on the application. (#7-2 ¶ 22.) Mr. Brown learned in late 2012 that Rural Development objected to Mr. Curtis continuing as a Managing Member of Elfers LLC and wanted him removed due to an outstanding judgment against him for breach of fiduciary duty with respect to a different housing project. (#7-2 ¶ 23.) Mr. Brown had grave concerns about removing Mr. Curtis, as Mr. Curtis was the only Elfers Partnership representative with whom Rightstone had had any substantial dealings. (#7-2 ¶ 24.) Before Rightstone would agree to the replacement of Mr. Curtis by his wife, Gail

---

[4] Mr. Curtis told Mr. Brown that he believed that the Housing Project had increased in value and, consequently, that the mortgage could be refinanced at a higher amount. (#7-2 ¶ 19.)

Curtis, Mr. Brown sought assurances through Boston Capital regarding the refinancing and the continuation of cash distributions. (#7-2 ¶ 25.) Upon receiving these assurances, Mr. Brown, on behalf of Rightstone, agreed that Gail Curtis could replace her husband as the Managing Member of Elfers LLC, and signed consent forms and documents to that effect as requested by Gail Curtis and Rural Development. (#7-2 ¶ 26.)

Gail Curtis then took actions, and committed omissions, that delayed the refinancing and withheld cash distributions to Rightstone. (#7-2 ¶ 27.) These actions and omissions included: dismissing the Management Agent designated in the Elfers LPA without notice and replacing that entity with a Florida corporation controlled by Gail Curtis' daughter and son-in-law and, in addition, refusing to take steps to force Rural Development to take action on the Elfers Partnership refinancing in order to benefit another of Gail Curtis' projects. (#7-2 ¶¶ 28-29.) The refinancing of the Housing Project was ultimately approved and processed in December 2013. (#7-2 ¶ 32.)

Rightstone did not receive the $16,000 cash distribution to which it was entitled for the year 2014 due to the failure of Elfers LLC, its agents Gail Curtis as Managing Member and her daughter and son-in-law as Management Agent, to use best efforts timely to submit the necessary paperwork to Rural Development for approval. (#7-2 ¶¶ 35-37.) After these actions and omissions, Rightstone lost confidence in Elfers LLC and Gail Curtis, determined to remove Elfers LLC as General Partner in accordance with the provisions of the Elfers LPA, and seeks to dissolve the Elfers Partnership. According to the Elfers LPA, however, before Rightstone can act to remove the General Partner or dissolve the Elfers Partnership, it is incumbent on Plaintiff to obtain:

> a prior determination of a court of competent jurisdiction in any action brought by or on behalf of the Limited Partners that neither the grant nor exercise of the rights afforded by the provisions sought to be exercised under the circumstances then in question will be deemed taking part in the control of the business so as to result in

the loss of any Limited Partner's limited liability.

#7-2 ¶ 39 (quoting Elfers LPA Section 4.6(A)). By means of the instant litigation, Plaintiff is requesting "that this Court make such prior determination so that Rightstone, as holder of the 94% interest of the Limited Partners, may remove Elfers LLC as General Partner and replace Elfers LLC with a competent and trustworthy general partner, may dissolve the Partnership and may proceed to the sale of its assets." (#7-2 ¶ 40.)

### III. DISCUSSION.

The Elfers Defendants effected removal of this case on the grounds of both federal question jurisdiction and diversity jurisdiction. (#1.) It is axiomatic that "'the removing party bears the burden of persuasion vis-a-vis the existence of federal jurisdiction.'" *Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 9 (1st Cir. 2014) (quoting *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbldg. Workers*, 132 F.3d 824, 831 (1st Cir.1997)). Further, "removal statutes are strictly construed." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941)); *see also Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004).

When considering whether diversity exists among the parties, the citizenship of a limited partnership or a limited liability company is determined by the citizenship of its constituent members. *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 196-96 (1990); *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006). Here, although Defendant Elfers Partnership is a Florida limited partnership (#63 ¶ 1), its limited partners, Rightstone, C&M and Boston Capital, are all Massachusetts entities. (#63 ¶¶ 4, 5, 6.) Given that Rightstone, a Massachusetts corporation with a principal place of business in the Commonwealth (#7-2 ¶ 1), is the plaintiff and its citizenship

is also considered, for analytical purposes, on the defendant side of the equation, clearly diversity jurisdiction does not exist.

Turning to the issue of federal question jurisdiction, 28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The inquiry here is whether the Court has original jurisdiction, to wit, is this a "civil action arising under the Constitution, laws, or treaties of the United States"? Title 28 U.S.C. 1331.

The Supreme Court has said:

> It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *Gully v. First National Bank*, 299 U.S. 109, 57 S. Ct. 96, 81 L. Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley*, [211 U.S. 149, 29 S. Ct. 42, 53 L.Ed. 126 (1908)]. The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts. *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S., [1] at 9-12, 103 S. Ct., [2841] at 2846-48 [(1983)].

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *see also Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc.*, 734 F.3d 28, 34 (1st Cir. 2013) ("The jurisdictional question is determined from what appears on the *plaintiff's* claim, without reference to any other pleadings"). It is undisputed that Rightstone has not pleaded a federal cause of action in its complaint. That fact alone, however, does not end the analysis.

The Elfers Defendants contend that Plaintiff's complaint presents embedded federal questions. The First Circuit has explained that:

> If a claim does not allege a federal cause of action, we must inquire into whether some element of the [plaintiff's] claim depends on the resolution of a substantial, disputed question of federal law. These constitute the second (and more

7

controversial) category of cases, those with an embedded federal question, meaning suits in which the plaintiff pleads a state-law cause of action that necessarily turns on some construction of federal law. These are cases where the issue is governed by state law, but a federal issue is decisive to the dispute and the federal ingredient ... is sufficiently substantial to confer the arising under jurisdiction.

*Ortiz-Bonilla*, 734 F.3d at 34-35 (internal citations and quotation marks omitted); *Lopez-Munoz*, 754 F.3d at 9 ("the federal ingredient doctrine . . . 'applies in a "special and small category of cases" where a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."'" *One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (alteration in original) (quoting *Gunn v. Minton*, - U.S. -, 133 S. Ct. 1059, 1065, 185 L. Ed.2d 72 (2013)), *cert. denied*, - U.S. -, 134 S. Ct. 986, 187 L.Ed.2d 775 (2014)). The Supreme Court has set out the factors to be considered:

[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn v. Minton*, - U.S. -, 133 S. Ct. 1059, 1065 (2013) (internal citations and quotation marks omitted); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-14 (2005); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009). In short, while "the scope of federal ingredient jurisdiction is determined by the totality of the circumstances, not by a single-factor test," *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013), *cert. denied*, - U.S. -, 134 S. Ct. 986 (2014), "a precise definition of its contours remains elusive." *Municipality of Mayaguez v. Corporacion Para el*

*Desarrollo del Oeste, Inc.*, 726 F.3d 8, 13 (1st Cir. 2013).

According to the Elfers Defendants, the Elfers LPA is replete with references to the pervasive role Rural Management plays in the Elfers Partnership and the Housing Project. For example, the Elfers LPA states that the purpose of the Elfers Partnership "is to acquire, hold, invest in, construct, develop, improve, maintain, operate, lease, and otherwise deal with the [Housing] Project. The Partnership and the General Partners shall operate the Project in accordance with any applicable FmHA regulations, and shall use their best efforts to generate Cash Flow for distribution to the Partners at the maximum realizable level in view of applicable FmHA regulations." (#7-2, Exh. A at 10.) Construction of the Housing Project was funded, in part, by a loan from Rural Development. (#7-2 ¶ 7; #7-2, Exh. A at 9, "Permanent Lender" is defined as "FmHA or its assignee.") Further, Section 13.9 of the Elfers LPA, entitled Financing Regulations, provides that:

> So long as the Project Documents are in effect, (a) each of the provisions of this Agreement shall be subject to, and the General Partners covenant to act in accordance with, the Project Documents,[5] (b) the Project Documents, as amended or supplemented, shall govern the rights and obligations of the Partners, their heirs, executors, administrators, successors and assigns to the extent expressly provided therein, (c) upon any dissolution of the Partnership or any transfer of the Project, no title or right to the possession and control of the Project and no right to collect rent therefrom shall pass to any Person who is not, or does not become, bound by the Project Documents and other FmHA documents in a manner satisfactory to FmHA, (d) no amendment of the Project Documents specified above shall become effective without the prior written consent of FmHA, and (e) the affairs of the Partnership shall be subject to FmHA regulation and no action shall be taken which would require the consent or approval of the FmHA unless the same is first obtained." (#7-2, Exh. A at 18.)

#7-2, Exh. A at 18. In addition, the Elfers Defendants note that federal regulations dictate that

---

[5]

The term Project Documents is defined to "mean[] and include the Mortgage, FmHA Loan Agreement, Construction Loan Agreement, the Commitments, the Construction Contract, and all other instruments delivered to (or required by) the Construction Lender or FmHA in connection with their commitments to the Partnership . . . ." (#7-2, Exh. A at 9.)

Rural Development's prior consent is needed to effectuate changes to the Elfers Partnership's organizational structure or ownership interests (7 C.F.R. § 3560.405); to transfer ownership or sale of the Housing Project (7 C.F.R. § 3560.406); or to make changes in the management of the Housing Project (7 C.F.R. § 3560.102).[6] (*See also* #9-1, Exh. B, Rural Development, Ch. 5.)

The Elfers Defendants point to the documentation involved in the 2013 refinancing (#9-1, Exh. C and D), including the Letter of Conditions issued in connection with the refinancing where Rural Development established conditions to close the loan:

> Organizational change of the withdrawal of John Curtis as Managing Member for Elfers RRH, LLC who is the General Partner for Elfers RRH, Ltd the borrower, is acceptable to the Office of General Counsel and must be filed and recorded prior to closing. The term of the Limited Partnership Agreement ends December 31, 2038. Therefore, an extension may be required as the RD equity loan will be for 25 years, the remaining economic life, determined by the appraisal. Elfers RRH, LLC, the General Partner for Elfers RRH, Ltd. must also be in full force and be effective through the term of the equity loan.

#9-1, Exh. D at 17-18. According to the Elfers Defendants, these documents further reflect the extensive involvement of Rural Development in the Housing Project and the predominance of federal law and regulations in the affairs of the Elfers Partnership.

A close examination of the claims advanced in the complaint belies the Elfers Defendants' contention that this is a case in which federal jurisdiction exists. In Count One,[7] Rightstone alleges that the acts and omissions of Elfers LLC in delaying the refinancing of the mortgage and in failing timely to submit the paperwork for approval of the 2014 distributions constituted breaches of the

---

[6] Of note, the First Circuit has stated, "[w]e do not believe that merely because a court will have to interpret the federal regulations, it necessarily follows that federal jurisdiction exists." *Templeton Bd. of Sewer Comm'rs. v. Am. Tissue Mills of Massachusetts, Inc.*, 352 F.3d 33, 40 (1st Cir. 2003).

[7] The Elfers Defendants advance no specific argument that imbedded federal issues are involved in Counts One and Two. *See* #28 at 9 (discussing Counts Three, Four and Five).

fiduciary duty owed by the General Partner of the Elfers Partnership to the Limited Partners, including Plaintiff. (#7-2 ¶¶ 42-46.) While Rural Development may have had to approve the 2014 distribution, the claim is that Elfers LLC breached its fiduciary duty by not submitting the paperwork to Rural Development in a timely manner. This is a straightforward state law claim; no federal issue is "necessarily raised" or "actually disputed" in this claim. *Gunn*, 133 S. Ct. at 1065.

Count Two is a claim for breach of contract. Rightstone alleges that, in return for consenting to the replacement of the Managing Member of the Elfers LLC in January 2103, Elfers LLC and the Elfers Partnership agreed that the Elfers Partnership would make its maximum allowable distributions to Plaintiff based on a certified annual audit and as approved by Rural Development. (#7-2 ¶ 49.) Elfers LLC failed and refused to make a distribution as determined by a 2014 certified annual audit of the Elfers Partnership, and so purportedly breached its contract with Rightstone. (#7-2 ¶ 50.) This is a run-of-the-mill state law contract claim; no federal issue is "necessarily raised" or "actually disputed" in this claim. *Gunn*, 133 S. Ct. at 1065; *Templeton Bd. of Sewer Comm'rs. v. Am. Tissue Mills of Massachusetts, Inc.*, 352 F.3d 33, 41 (1st Cir. 2003) ("We can discern nothing more in this cause of action than a state law breach of contract claim over which the district court did not have subject matter jurisdiction").

Count Three is a claim for declaratory relief brought pursuant to the Massachusetts Declaratory Judgment Act, Mass. Gen. L. c. 231A.[8] Rightstone, as the holder of the majority

---

8

In part, the statute provides:

The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not; and such proceeding shall not be open to

interest of the Limited Partners interests in the Elfers Partnership, has determined to exercised its rights under the Elfers LPA. (#7-2 ¶ 54.) Specifically, Plaintiff wants to remove Elfers LLC as the General Partner of the Elfers Partnership and to continue the Partnership's business with a substitute General Partner. (#7-2 ¶ 54.)

Section 4.6 of the Elfers LPA, entitled Special Rights of Limited Partners, provides, in part:

A. Subject to the provisions set forth in this Section 4.6, the Limited Partners by the vote of the majority in the interest of the Limited Partners shall have the right:

    (i) to remove the General Partners;

    \*\*\*\*\*

    (iii) to dissolve the Partnership;

    (iv) to continue the business of the Partnership with substitute General Partner(s); and

    (v) to approve or disapprove the sale of all or substantially all of the assets of the Partnership;

provided, however, that no removal of a General Partner or amendment of the Agreement shall affect the vested rights (including, without limitation, the right to receive any fees, allocable share of Cash Flow or other distributions, or profits and losses thereunder) or increase any of the obligations of any General Partner, without his consent, and that no amendment shall increase the liability of any Limited Partner or in any way alter his allocable share of Cash Flow or other distributions or profits and losses thereunder without his prior written consent. The exercise of any rights provided for in subparagraphs (i) though (v) of this paragraph shall each be subject to (a) a prior determination by a court of competent jurisdiction in an action brought by or on behalf of the Limited Partners that neither the grant nor exercise of the rights afforded by the provisions sought to be exercised under the circumstances then in question will be deemed taking part in the control of the business so as to result in the loss of any Limited Partner's limited liability and (b) a ruling by the Internal

---

objection on the ground that a merely declaratory judgment or decree is sought thereby and such declaration, when made, shall have the force and effect of a final judgment or decree and be reviewable as such.

Mass. Gen. L. c. 231A, § 1.

>Revenue Service that such rights will not result in the Partnership not being considered a partnership for Federal income tax purposes.

#7-2, Exh. A at 13-14 (emphasis in original). In this Count, Rightstone is seeking a declaratory judgment as contemplated in Section 4.6(A) of the Elfers LPA, to wit, a determination "that neither the grant nor exercise of the rights afforded by the provisions sought to be exercised under the circumstances then in question will be deemed taking part in the control of the business so as to result in the loss of any Limited Partner's limited liability."[9] (#7-2 ¶ 59 and Exh. A at 13.) Rightstone also seeks a declaratory judgment that "Plaintiff, acting as the holder of the majority in interest of the Limited Partners, may remove Elfers LLC as General Partner of the Elfers Partnership and continue the business of the Partnership with a substitute General Partner." (#7-2 ¶ 60 and Exh. A at 13.) In short, Plaintiff is seeking a declaration of its rights delineated in Section 4.6 of the Elfers LPA, and the fulfillment of the one of the stated conditions precedent to exercising those rights.

The Elfers Defendants argue that because the Elfers Partnership is so heavily regulated by Rural Development, a substantial question of federal law is at stake. The regulations to which the Elfers Defendants point by way of example, e.g., 7 C.F.R. §§ 3560.405, 3560.406, 3560.102, all mandate that prior consent from Rural Development must be obtained before changes, such as those in the organizational structure, are implemented. The entry of a declaratory judgment with regard to Rightstone's rights under Section 4.6(A) of the Elfers LPA need not encroach on the regulatory domain of Rural Development or nullify Rightstone's regulatory obligations. That Rightstone may

---

[9] In their opposition, the Elfers Defendants criticize Rightstone for having "failed to plead or undertake the required conditions precedent to securing a vote to replace the general partner - those being a court order and an IRS ruling." (#28 at 14 n. 6.) The court order mandated in Section 4.6(A) of the Elfers LPA is precisely the relief Plaintiff is seeking in Counts Three, Four and Five.

be declared to have the right to remove the General Partner and continue the business of the Partnership with a substitute General Partner under Section 4.6(A) of the Elfers LPA simply does not mean that Plaintiff need not meet regulatory requirements in doing so; the rights and obligations are concomitant, not exclusive.

The Supreme Court has explained that "it is not enough that the federal issue be significant to the particular parties in the immediate suit . . . [t]he substantiality inquiry under *Grable* [*& Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)] looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066.  The First Circuit has defined two instances in which an issue may be viewed as a substantial federal issue for purposes of the federal ingredient doctrine.  First,

> an issue may be substantial where the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases. In other words, a case is more likely to be important to the federal system as a whole if it presents nearly pure issue of law . . . that could be settled once and for all rather than an issue that is fact-bound and situation-specific and whose holding will more likely be limited to the facts of the case.

*Municipality of Mayaguez*, 726 F.3d at 14 (internal citations and quotation marks omitted). The claim for declaratory relief in Count Three falls in the latter category, being both "fact-bound and situation-specific." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). Rightstone is not challenging the applicability of any federal regulation, and the discreet relief it seeks will not involve the interpretation of any federal statute or regulation. Resolution of this particular claim cannot be viewed as important to the overall federal system.

Next, the First Circuit explained that:

> [A] federal issue may also be substantial where the resolution of the issue has broader significance . . . for the Federal Government. That is, because [t]he Government has a direct interest in the availability of a federal forum to vindicate its

>own administrative action, the Court has repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by a federal department, agency, or service.

*Municipality of Mayaguez*, 726 F.3d at 14 (internal citations and quotation marks omitted). Rural Development's administrative actions or performance are not at issue in this claim.

"[C]ompliance with an intricate and detailed set of federal regulatory requirements and a connection to federal monies [are insufficient] in themselves to warrant federal-question jurisdiction." *Municipality of Mayaguez*, 726 F.3d at 17 (internal quotation marks omitted). Under the *Municipality of Mayaguez* analysis, Count Three does not raise a substantial question of federal law and, consequently, federal jurisdiction over the claim does not lie.

Count Four is another claim for declaratory relief brought under the Massachusetts Declaratory Judgment Act. Rightstone alleges that it wants to dissolve the Elfers Partnership and approve the sale of all or substantially all of its assets. (#7-2 ¶ 63.) Pursuant to section 4.6(A) of the Elfers LPA, Plaintiff seeks a declaration from the Court that such action will not "be deemed taking part in the control of the business so as to result in the loss of any Limited Partner's limited liability." (#7-2 ¶ 68 and Exh. A at 13) Such a court determination is a condition precedent to the exercise of any right under section 4.6(A).

In Count Five, Rightstone brings another claim under the Massachusetts Declaratory Judgment Act, alleging that the Elfers Partnership failed to distribute Partners Cash Flow of at least $1,500 from at least 2006 through and including 2013. (#7-2 ¶ 73.) Consequent to that failure, Plaintiff seeks a declaration that the condition precedent set forth in the Elfers LPA (#7-2, Exh. A at 11-12) has been satisfied such that the Special Limited Partner may terminate the Management Agent and appoint a new one. (#7-2 ¶ 74.) The caveat in the Elfers LPA is that the Special Limited

Partner's power to terminate and appoint is subject to the approval of Rural Development. (#7-2, Exh. A at 11-12.)

The analysis with respect to Count Three is fully applicable to the claims alleged in Count Four and Five. Because no substantial question of federal law is raised in Counts Four and Five, there is no federal jurisdiction over those claims.

## IV. RECOMMENDATION.

The Elfers Defendants have not carried their burden of demonstrating that resolution of Rightstone's state law claims requires the Court to address a "necessarily raised" or "actually disputed" substantial issue of federal law. In the absence of any embedded federal questions in Plaintiff's claims, there is no federal question jurisdiction. Because diversity jurisdiction is likewise lacking, I RECOMMEND that Plaintiff's Motion To Remand Action To Plymouth Superior Court (#14) be ALLOWED.

## V. REVIEW BY DISTRICT JUDGE.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford*

*Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

                 /s / M. Page Kelley
                 M. Page Kelley
June 14, 2016            United States Magistrate Judge